IN THE UNITED STATES DISTRIC COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SF by and through her parents and natural guardians, MATTHEW FREEMAN and KAREN FREEMAN ▓▓▓▓▓▓▓▓▓▓ <br><br> v. <br><br> DELAWARE VALLEY SCHOOL DISTRICT ▓▓▓▓▓▓▓▓▓▓ <br><br> and <br><br> ROBERT L. SMITH ▓▓▓▓▓▓▓▓▓▓ <br><br> and <br><br> JAMES MELODY ▓▓▓▓▓▓▓▓▓▓ <br><br> and <br><br> DR. CANDIS FINAN ▓▓▓▓▓▓▓▓▓▓ | CIVIL ACTION NO. 08-CV-*581* <br><br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs, SF by and through her parents and natural guardians, Matthew Freeman and Karen Freeman, by and through her undersigned counsel, Levy, Angstreich, Finney, Baldante, Rubenstein & Coren hereby files the following complaint against the defendants in the above-captioned case.

## JURISDICTIONAL STATEMENT

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331, which gives district court jurisdiction over all civil actions arising under the Constitution, laws and treaties of the United States.

2. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be commenced by any person to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights. Lastly, this Court has supplemental jurisdiction over the Freeman's state law claims pursuant to 28 U.S.C. §1367.

3. This is an action to redress the deprivation of SF's constitutional rights under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. §1983 and to redress quid pro quo and hostile educational environment sexual harassment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a), as more fully set forth herein. SF also files this action to recover for state law claims arising under the Pennsylvania Constitution and Pennsylvania common law, all of which arise out of the same common nucleus of facts as the aforementioned claims under §1983 and Title IX.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), since at all times material hereto the defendants resided in this district and the events giving rise to the claims

occurred in this district.

## THE PARTIES

5.  SF was at all times relevant hereto a minor and a student attending Shohola Elementary School, a public educational institution within the Delaware Valley School District situated in Pike County, Pennsylvania. SF is vested with certain rights, privileges and immunities as a citizen of these United States and of the Commonwealth of Pennsylvania.

6.  Plaintiffs Matthew and Karen Freeman, at all times material hereto, were and are the parents and natural guardians of SF.

7.  Defendant Delaware Valley School District ("the School District") is a political subdivision as that term is defined in the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§8541-8542. The School District is organized and in existence pursuant to the laws of the Commonwealth of Pennsylvania and receives federal financial assistance.

8.  Defendant Robert L. Smith ("Smith") was at all times relevant hereto the principal at Shohola Elementary School.

9.  Defendant James Melody ("Melody") was the Superintendent of Delaware Valley School District from July 1985 through July 1998.

10. Defendant Dr. Candis Finan ("Finan") was and is the Superintendent of Delaware Valley School District and has been since July of 1998.

11. At all times relevant hereto, all defendants were acting in their individual and official capacities and under color of the law of the Commonwealth of Pennsylvania.

12. At all relevant times hereto, all individual defendants had the duty and authority to effectuate the policies and customs of the School District and to implement and execute all federal, state and School District regulations and/or policies relevant to the operation of a public.

3

school

13. At all times relevant hereto, the School District was implementing and executing its policies and customs in regard to the events that resulted in the deprivation of SF's constitutional, statutory and common-law rights.

14. The School District is responsible to ensure that all School District employees are properly trained and supervised in the course of their employment relationship with the School District.

15. The School District is responsible for all acts and omissions of all School District employees.

**FACTUAL HISTORY**

I. **Sexual abuse of SF**

16. Plaintiffs herein incorporate paragraphs one (1) through fifteen (15) as though the same were set forth herein at length.

17. At all times material hereto, SF was a minor under eighteen years of age.

18. At all times material hereto, SF was a student at Shohola Elementary School which is a part of the defendant, School District.

19. During the 1998 – 1999 school year, SF was a third grade student at Shohola elementary school and was seven (7) years old at the beginning of the school year and was eight (8) years old at the conclusion of the school year.

20. During the 1998 – 1999 school year SF was assigned Thomas Matthews ("Matthews") as a third grade teacher.

21. Beginning in and around November of 1998 and continuing through the course of the 1998-1999 school year, SF endured a series of sexual touchings, by Matthews, which

occurred approximately once per week.

22. The touchings occurred during the school day, in the classroom, while the other students were present.

23. The touchings occurred at Matthews' desk, which was positioned in the back of the classroom and was facing the front of the room, with the students' desks in front of Matthews' desk and also facing the front of the room.

24. Matthews would touch SF after he placed her on his lap and/or knee, or while she was seated in a chair, very close to Matthews at Matthews' desk.

25. Matthews would put his arm around SF's waist and he would slowly slide his hand down the front of her pants and underwear often times placing a finger into her vagina.

26. In or around June of 1999, Matthews placed SF on his lap while the class was watching the movie *Gulliver's Travels.*

27. Matthews turned the lights in the classroom off while the movie, *Gulliver's Travels* was playing.

28. While SF was on his lap, Matthews proceeded to slide his hand into her underwear and placed his fingers in her vagina and moved his fingers in and out of her vagina for approximately one hour.

29. As the movie was ending Matthews removed his fingers from SF's vagina and instructed SF to return to her seat.

30. In or around June of 1999, Matthews placed SF on his lap while the class was watching the movie *Oliver Twist.*

31. Matthews turned the lights in the classroom off while the movie, *Oliver Twist* was playing.

32. While SF was on his lap, Matthews proceeded to slide his hands into her underwear and placed his fingers in her vagina and moved his fingers in and out of her vagina.

33. Matthews was subsequently convicted of sexual offenses against SF, including one count of aggravated indecent assault, fourteen counts of indecent assault and corruption of minors.

## II. Defendants' Notice of Matthews' Misconduct

34. Plaintiff herein incorporates paragraphs one (1) through thirty-three (33) as though the same were set forth herein at length.

35. On or about October 25, 1982, Defendant, School District hired Matthews as a fourth grade teacher at Dingman-Delaware Elementary School.

36. On or about May 3, 1984, Defendant, School District transferred Matthews to Dingman-Delaware Elementary School as a second and third grade teacher.

37. On or about September 20, 1985, Defendant, School District granted Matthews tenure.

38. On or about April 29, 1991, Defendant, School District transferred Matthews to Shohola Elementary School as a third grade teacher.

39. During the 1994-1995 school year, librarian, Betty Fabian filed a complaint with defendant, Smith, that Matthews had touched her inappropriately while she was working in the library.

40. Defendant, Smith conducted an investigation of the allegation.

41. On or about November 22, 1994, defendant, Smith issued a memorandum to Matthews in which he stated, in part:

> [I] I am directing you to . . . not touch or pester any female
> employee or person on the premises of the Shohola Elementary

6

School. If you exhibit any subsequent behavior similar to that described, you will face stronger disciplinary action including possible termination of employment.

42. During the 1995-1996 school year, LF was a student at Shohola Elementary School.

43. During 1995-1996 school year, subsequent to the incident involving Betty Fabian, student LF was a student in Matthews' third grade class.

44. During this school year, LF was placed on Matthews lap while the class was watching a Spanish video making her feel very uncomfortable.

45. Also, during the 1995-1996 school year, Matthews stood behind LF and rested his hands in front of LF's shoulders close to her breasts.

46. In or about the 1995-1996 school year, LF printed out a note utilizing a school computer which stated in effect, please help me Tom Matthews keeps touching me and it makes me feel uncomfortable.

47. The note written by LF was found on the school's central dot matrix printer, by Margaret Schaffer, a teacher at Shohola Elementary School.

48. Ms. Schaffer took the note to defendant, Smith.

49. During the 1995-1996 school year, TG was a student at Shohola Elementary School.

50. During the 1995-1996 school year, Matthews stood behind TG, wrapped both of his arms around her and rubbed her stomach area.

51. TG reported to defendant Smith, that Matthews would touch her every time he had been assigned to lunch supervision in the Cafeteria over a three week period.

52. TG reported that she "feels sick when he does this".

7

53. As a result of the touching of LF and TG by Matthews defendants Melody and Smith conducted an investigation.

54. On January 10, 1996, Defendant, Melody wrote Matthews a memorandum in which he stated, in part:

> Several recent allegations that you violated district policy on sexual harassment in that you were massaging the backs of female students, rubbing the stomach of a student, rubbing the stomach of a student while standing behind her and had students sitting on your lap have been substantiated . . .[Y]ou are given the following direction by me: (1) You are not to touch, pat, massage or have any other physical contact with students or staff in school buildings or vehicles, on school grounds or at school sponsored activities. . . In light of your personnel file, be advised that any undo familiarity with students or staff or violations of this directive will result in my recommendation for your immediate suspension without pay and the termination of your employment by the Delaware Valley School District. In addition, I will pursue revocation of your teaching certificate if evidence exists requiring such action.

55. Defendant Matthews received a seven day suspension without pay as a result of the improper touching of LF and TG.

56. On January 31, 1996 an evaluation was performed of Matthews' teaching, the written report of the evaluation having a date of February 1, 1996 and signed by defendants Melody and Smith.

57. The comments to the evaluation state, in part:

> By touching students in a manner that is inappropriate for a school setting, Mr. Matthews has created a situation which is not conducive to obtaining a positive reaction from students. . .Mr. Matthews actions reflect that he does not understand and respect the differences in student needs and interests, nor has he treated students with courtesy or tact . . .Mr. Matthews' actions demonstrate an unwillingness to work with administrators in a positive manner and to respond to constructive criticism for improvement in the educational setting; Mr. Matthews was previously warned about touching – in a memo on November 22,

> 1994; Mr. Matthews was told to "not touch or pester any female employee or person on the premises of the Shohola Elementary School...Finally, Mr. Matthews' behavior, in regard to touching students, does not display intelligent/mature behavior, nor does it show that he conducts himself with professional dignity.

58. Despite notice of continued inappropriate touching, and upon information and belief and therefore averred, actual notice of Mathews touching students in a sexual nature and his sexual exploitation of students through reports of custodians, teachers, occurrences in plain view, and through other students together with Defendants' grave concerns of Matthews' inability to understand that students should not be touched inappropriately, Defendants did not terminate Matthews' employment, nor take any additional action against him, to further investigate his conduct and/or to protect the students of Shohola Elementary School, therefore acting with deliberate indifference to Matthews misconduct.

59. On or about March 4, 1996, or sometime prior thereto, Matthews prepared a written response to the statements in the evaluation in which he stated, in part:

> I did put my hand on a students shoulder to ask if she is coming to practice.

60. Despite notice of continued inappropriate touching, and upon information and belief and therefore averred, actual notice of Mathews touching students in a sexual nature and his sexual exploitation of students through reports of custodians, teachers, occurrences in plain view, and through other students together with Defendants' grave concerns of Matthews' inability to understand that students should not be touched inappropriately, Defendants did not terminate Matthews' employment, nor take any additional action against him, to further investigate his conduct and/or to protect the students of Shohola Elementary School, therefore acting with deliberate indifference to Matthews misconduct.

61. On March 4, 1996, Defendant, Melody wrote to Matthews in which he stated, in

part:

> I have reviewed your latest undated response to your evaluation of February 1, 1996. Your continued failure to understand the seriousness of your actions is of great concern to the district. . . In summary, this incident was not isolated. Previous documented problems with your conduct and performance cause me grave concern after reading your rationalization in the attached memo.

62. Despite notice of continued inappropriate touching, and upon information and belief and therefore averred, actual notice of Mathews touching students in a sexual nature and his sexual exploitation of students through reports of custodians, teachers, occurrences in plain view, and through other students together with Defendants' grave concerns of Matthews' inability to understand that students should not be touched inappropriately, Defendants did not terminate Matthews' employment, nor take any additional action against him, to further investigate his conduct and/or to protect the students of Shohola Elementary School, therefore acting with deliberate indifference to Matthews misconduct.

63. MR was a student at Shohola elementary school during the 1997-1998 school year.

64. MR was a student in Matthews' third grade class.

65. While a student in Matthews' third grade class, during class time, when the other students were present, MR was placed on Matthews' lap at which time he rubbed her legs and on at least one occasion, rubbed her vagina.

66. MH was a student during the 1997-1998 school year.

67. MH was a student in Matthews' third grade class.

68. While a student in Matthews' third grade class, during class time while the other students were present, MH was placed on Matthews' lap on many occasions, and on at least five (5) of those occasions, Matthews rubbed MH's leg and put his hands into her pants and into her

underwear.

69. During the 1997-1998 Matthews' placed many of his third grade students on his lap during class.

70. Despite notice of continued inappropriate touching, and upon information and belief and therefore averred, actual notice of Mathews touching students in a sexual nature and his sexual exploitation of students through reports of custodians, teachers, occurrences in plain view, and through other students together with Defendants' grave concerns of Matthews' inability to understand that students should not be touched inappropriately, Defendants did not terminate Matthews' employment, nor take any additional action against him, to further investigate his conduct and/or to protect the students of Shohola Elementary School, therefore acting with deliberate indifference to Matthews misconduct.

71. On or about December 18, 1998, Defendant, Finan appointed Matthews' as the Odyssey of the Mind Coach.

72. On or about June 18, 1999 Defendant, Finan appointed Matthews' as Student Council Advisor.

73. Beginning in the 1997-1998 school year and continuing thereafter and for all material times hereto, Chris Sigga was a janitor at Shohola Elementary School.

74. Sigga, on several occasions, witnessed Matthews in his class room with the lights off and with the students' heads on their desk, while a movie was playing and he observed Matthews sitting in the back of the classroom with a child on his lap.

75. On one occasion, the door to the classroom was locked and Sigga used a key to enter the room at which time a female student fell off of Matthews' lap.

76. Sigga reported these incidents to Defendant, Smith, and even physically took

Matthews to Smith's office to report what had occurred.

77.     Despite notice of this continued inappropriate touching, including, upon information and belief, notice of touching of students in a sexual nature and sexual exploitation of students and upon information and belief knowledge of said touching through reports of custodians, teachers, occurrences in plain view, and other students together with Defendants' grave concerns of Matthews' inability to understand that students should not be touched inappropriately and sexually exploited, Defendants consciously failed to supervise Matthews and/or terminate Matthews' employment, nor take any additional action against him, to further investigate his conduct and/or to protect the students of Shohola Elementary School all with conscious indifference to the grave consequences known to the defendants of their failure to act.

78.     On or about January 20, 2000, Defendant, Finan suspended Matthews as a teacher after allegations of sexual touching were made to Defendant, Smith, by the parents of MR.

79.     On or about March 8, 2000, Defendants met with the Pennsylvania State Police regarding the allegations of the improper touching of Matthews in connection with an ongoing investigation of the reports of improper touching at which time the investigating officers advised defendants of their "blatant non-compliance" of the reporting requirements of crimes alleged to have been committed against a student by an employee of the district pursuant to 23 Pa.C.S.A. §6353.

80.     At no time prior to March 8, 2000 did defendants make any reports as required by 23 Pa.C.S.A. §6352 and §6353 despite defendants knowledge that sexual exploitation to students had occurred dating back to 1994 and continuing consistently each school year through 2000.

81.     On or about March 10, 2000 defendant, Finan wrote to Matthews accepting his resignation as Elementary School Teacher, effective June of 2000.

82.     On or about March 14, 2000, Matthews and the School District entered into a Release and Agreement in which the School District agreed, in part:

> The District agrees that in the event it receives an inquiry from a potential employer of Mr. Matthews, the Director of Personnel for the District will provide a written response as follows: Thomas H. Matthews was a teacher employed by the Delaware Valley School District from October 19, 1982 on. Mr. Matthews submitted a voluntary early resignation effective June 16, 2000 (the last day of the 1999-2000 school year).

83.     On or about September 15, 2000, Defendants responded to a request for employment verification from the Stafford County Public Schools regarding Matthews' employment at the School District.

84.     At no time did Defendants advise Stafford County Public Schools of the allegations of improper sexual touching of students by Matthews.

### III.    Damages suffered by SF

85.     SF has suffered severe and permanent psychological damage, physical harm and emotional distress as a direct and proximate result of Matthews' sexual misconduct.

86.     SF's life is severely and permanently damaged as a result of the harm that she suffered at Matthews' hands - harm that was greatly exacerbated due to the other defendants' failure to investigate and take action against Matthews' misdeeds, which Plaintiff believes and therefore avers that they had knowledge thereof.

### COUNT I - 42 U.S.C. § 1983
### PLAINTIFF v. ALL DEFENDANTS

87.     Plaintiffs herein incorporate paragraphs one (1) through eighty-five (85) as though the same were set forth at length.

88.     Under the Due Process Clause of the Fourteenth Amendment, SF had the right as a public school student to personal security and bodily integrity.

89. Under the Due Process Clause of the Fourteenth Amendment, SF had the right to be free from sexual abuse at the hands of public school employees such as Matthews.

90. Under the Fourth Amendment, SF had the right to be free from illegal seizures.

91. Defendants Smith, Melody and Finan, all state actors, subjected SF to illegal seizures and to violations of her right to personal security and bodily integrity by failing to properly investigate Matthews' misconduct, failing to adequately supervise Matthews, failing to adequately train Matthews and manifesting deliberate indifference to Matthews' misconduct.

92. SF believes and therefore avers that the School District has unconstitutional customs or policies of (a) failing to investigate evidence of School District employees' tortious misconduct against School District students in the nature of illegal seizures and violations of their right to personal security and bodily integrity and (b) failing to adequately supervise and train School District employees with regard to maintaining, preserving and protecting students from illegal seizures and violations of their right to personal security and bodily integrity.

93. SF believes and therefore avers that the School District has followed these unconstitutional customs or policies not only with regard to herself but also with regard to tortious misconduct committed against other School District students.

94. Defendants Smith, Melody and Finan and other School District employees are policymakers for the purpose of implementing the School District's unconstitutional policies or customs.

95. SF has suffered severe and permanent psychological damage, physical harm and emotional distress as a direct and proximate result of Defendants' violations of her Fourth and Fourteenth Amendment rights.

**WHEREFORE,** Plaintiffs demands that judgment be entered in her favor and against

Defendants Smith, Melody, Finan, and the School District, jointly and severally, for compensatory damages, punitive damages, interest, costs and attorney fees.

### COUNT II - TITLE IX, 20 U.S.C. § 1681
### PLAINTIFF v. DELAWARE VALLEY SCHOOL DISTRICT

96. Plaintiff herein incorporates paragraphs one (1) through ninety-four (94) as though the same were set forth herein at length.

97. The School District created and/or permitted to continue a quid pro quo sexual harassment and hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), because (a) SF was a member of a protected class; (b) she was subjected to sexual harassment in the form of sexual advances and actual sexual contact/conduct from her teacher, Matthews; (c) the harassment was based on her sex; (d) the sexual harassment unreasonably interfered with her school performance and created an intimidating, hostile or offensive educational environment that severely affected her psychological well-being; (e) school district officials Smith, Melody and Finan, who had authority to institute corrective measures on behalf of the School District, had actual knowledge of Matthews' misconduct no later than the beginning of the 1994-1995 school year and continuing through the 1998-1999 school year and beyond, but were deliberately indifferent thereto.

98. Due to the School District's failure to properly act and/or properly investigate, SF was subject to sexual harassment in the form of sexual advances and actual sexual contact/conduct from her teacher.

99. SF has suffered severe and permanent psychological damage, physical harm and emotional distress as a direct and proximate result of the School District's violations of her rights under Title IX.

**WHEREFORE,** Plaintiffs demands that judgment be entered in her favor and against Defendants Smith, Melody, Finan, and the School District, jointly and severally, for compensatory damages, punitive damages, interest, costs and attorney fees.

### COUNT III - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### PLAINTIFF v. ALL DEFENDANTS

100.  Plaintiff herein incorporates paragraphs one (1) through ninety-eight (98) as though the same were set forth herein at length.

101.  All Defendants intentionally and deliberately inflicted extreme emotional distress upon SF through the outrageous series of acts averred in paragraphs 16-84, *supra.* Defendants' extreme and outrageous misconduct caused SF to suffer severe and permanent psychological damage and physical harm.

**WHEREFORE,** Plaintiffs demands that judgment be entered in her favor and against Defendants Smith, Melody, Finan, and the School District, jointly and severally, for compensatory damages, punitive damages, interest, costs and attorney fees.

### COUNT IV - VIOLATIONS OF PENNSYLVANIA CONSTITUTION
### PLAINTIFF v. ALL DEFENDANTS

102.  Plaintiff herein incorporates paragraphs one (1) through one hundred (100) as though the same were set forth herein at length.

103.  All Defendants intentionally and deliberately violated SF's due process rights under Article I, § 1 of the Pennsylvania Constitution and her right against illegal seizures under Article I, § 8 of the Pennsylvania Constitution through the series of misdeeds averred in paragraphs 16-84, *supra.*

104.  Defendants' extreme and outrageous misconduct caused SF to suffer severe and permanent psychological damage and physical harm.

**WHEREFORE,** Plaintiffs demands that judgment be entered in her favor and against Defendants Smith, Melody, Finan, and the School District, jointly and severally, for compensatory damages, punitive damages, interest, costs and attorney fees.

### COUNT V – WILLFULL MISCONDUCT
### PLAINTIFF v. SMITH, MELODY and FINAN

105. Plaintiff herein incorporates paragraphs one (1) through one hundred-three (103) as though the same were set forth herein at length.

106. As more fully outlined in paragraphs 16-84, *supra.*, defendants Smith, Melody and Finan acted with Willful Misconduct in failing to properly supervise Matthews and enforce school district policy and in particular school district policy specifically directed toward Matthews as early as 1994 and continuing through 2000, with respect to the touching of other students.

107. Defendants, through their actions and writings, made it clear that they knew that continued touching of students it would be highly probable that students would be harmed and would be harmed sexually.

108. Despite this knowledge and knowledge by defendants, Smith, Melody and Finan that Matthews continued to inappropriately touch third grade students in his class, defendants, Smith, Melody and Finan decided to take no action to stop the touching and/or terminate Matthews' employment with conscious indifference to the consequences.

109. As a result of defendants' Willful Misconduct, plaintiff SF was caused to suffer severe and permanent psychological damage and physical harm.

**WHEREFORE,** Plaintiffs demands that judgment be entered in her favor and against Defendants Smith, Melody and Finan, jointly and severally, for compensatory damages, punitive damages, interest, costs and attorney fees.

## COUNT VI – PUNITIVE DAMAGES
## PLAINTIFF v. SMITH, MELODY and FINAN

110.  Plaintiff herein incorporates paragraphs one (1) through one hundred-ten (110) as though the same were set forth herein at length.

111.  As more fully outlined in paragraphs 16-84 *supra.*, defendants Smith, Melody and Finan acted recklessly and with callous indifference to the federally protected rights of SF.

112.  As a result of defendants' recklessness and/or callous indifference to the federally protected rights of SF, plaintiff SF was caused to suffer severe and permanent psychological damage and physical harm.

**WHEREFORE,** Plaintiffs demands that judgment be entered in her favor and against Defendants Smith, Melody and Finan, jointly and severally, for compensatory damages, punitive damages, interest, costs and attorney fees.

LEVY, ANGSTREICH, FINNEY, BALDANTE,
RUBENSTEIN & COREN, P.C.

By: _____
Jack S. Cohen, Esquire
Attorney for Plaintiff